IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| BARBARA DANG | | |
| | * | |
| Appellant, | | |
| | * | |
| v. | | Civil Action No.: RDB-12-3343 |
| | * | Bankruptcy Adversary No.: 10-216 |
| | | Bankruptcy Case No.: 10-14152 |
| BANK OF AMERICA N.A.; BAC HOME | | |
| LOANS SERVICING L.P.; CIG HIF 1ST | * | |
| LIEN MORTGAGE; and NORTHWEST | | |
| TRUSTEE SERVICES | * | |
| | | |
| Appellees. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM OPINION

This case is before this Court on appeal of two orders of the United States Bankruptcy Court for the District of Maryland (the "Bankruptcy Court"): (1) the Bankruptcy Court's Memorandum Order of September 30, 2011, granting motions to dismiss the adversary proceeding initiated by Appellant Barbara Dang ("Appellant") for failure to state claims upon which relief can be granted; and (2) the Bankruptcy's Court subsequent Order Denying Motion to Amend or Vacate the September 30, 2011, order of dismissal.  These orders resulted in the dismissal of the Appellant's adversary proceeding against Appellees Bank of America, N.A., BAC Home Loans Servicing L.P., and CIG HIF 1st Lien Mortgage (collectively, "Bank of America"), as well as Northwest Trustee Services ("Northwest;" together with Bank of America, "Appellees").  The Appellant, proceeding *pro se*, now challenges the Bankruptcy Court's dismissal on three grounds: (1) that the Bankruptcy Court

erred in assuming jurisdiction over the adversary proceeding; (2) that the Bankruptcy Court lacked authority to rule on the adversary proceeding; and (3) that the Bankruptcy Court erred in granting relief to CIG HFI 1st Lien Mortgage.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a)(1), which extends jurisdiction to the United States District Courts to hear appeals from the final judgments, orders, and decrees of the United States Bankruptcy Courts.  The parties have fully briefed the issues, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011). For the reasons stated below, this Court treats the Bankruptcy Court's order of dismissal as proposed findings of fact and conclusions of law, and ADOPTS those findings and conclusions.  Accordingly, this Court GRANTS the Appellees' motions to dismiss the Appellant's adversary proceeding.

## BACKGROUND AND PROCEDURAL HISTORY

This *pro se* Appellant is no stranger to the Bankruptcy Court.  Indeed, between May 8, 2009, and March 1, 2010, she filed for bankruptcy three separate times in the District of Maryland.  The following statement of facts begins with a summary of the Appellant's history in the Bankruptcy Court.  It then focuses on the adversary proceeding at issue in this appeal.

### I.    The Appellant's Chapter 7 and Chapter 13 Petitions

On September 20, 2006, the Appellant Barbara Dang ("Appellant") executed a promissory note and deed of trust in the amount of $240,000.  The deed of trust is secured

by a property known as 718 Lassen Street, Tulare, California 93275 ("the Tulare Property").[1]
The promissory note and deed of trust were executed in favor of Bank of America N.A.
("Bank of America") and serviced by BAC Home Loans Servicing L.P. ("BAC").   On
December 8, 2008, after both the note and deed of trust had fallen into default, Bank of
America appointed Northwest Trustee Services ("Northwest") as substitute trustee to
conduct a foreclosure sale pursuant to the deed of trust.

The Appellant initiated her first of several bankruptcy proceedings on May 8, 2009,
thereby receiving the protection of bankruptcy's automatic stay, which halted the foreclosure
proceeding.[2]   The Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy
Code, 11 U.S.C. §§ 701, *et seq.*[3]   On May 28, 2009, the Appellant filed a summary of
schedules and declaration, in which she identified Bank of America as a secured creditor
regarding the Tulare Property and confirmed that she did not dispute the debt owed to Bank
of America.  Summary of Schedules, Bankruptcy No. 09-18291, ECF No. 21.  In a Chapter 7
Statement of Intention, the Appellant confirmed that she would retain the Tulare Property
and reaffirm the debt.  Statement of Intention, Bankruptcy No. 09-18291, ECF No. 30.

---

[1] The Tulare Property is a secondary residence; the Appellant lists it as a rental property in various schedules with the Bankruptcy Court.  The Appellant's primary residence is at 345 Folcroft Street in Baltimore, Maryland (the "Baltimore Property").  The Baltimore Property is the subject of another adversary case, which the Bankruptcy Court dismissed on similar grounds.  The Appellant has likewise appealed that dismissal, which is addressed in a separate Memorandum Opinion, *Dang v. Quicken Loans*, Civil Case No. 12-3342.

[2] A bankruptcy petition operates as a stay of "the commencement or continuation . . . of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case." 11 U.S.C. § 362.

[3] The relief provided under Chapter 7, 11 U.S.C. §§ 701 *et seq.*, is liquidation.  In a Chapter 7 bankruptcy case, the bankruptcy trustee liquidates the debtor's assets, which involves selling the debtor's nonexempt property and distributing the proceeds from that sale to the creditors.

3

On August 31, 2009, the Bankruptcy Court issued an order to lift the automatic stay imposed by 11 U.S.C. § 362(a) so as to enable Bank of America "to exercise its rights under state law as to" the Tulare Property. *See* Order Lifting Automatic Stay, Bankruptcy No. 09-18291, ECF No. 53. On that same day, the Appellant was granted a discharge. *See* Discharge of Debtor, Bankruptcy No. 09-18291, ECF No. 54. Notably, the discharge did not affect Bank of America's secured interest in the Tulare Property. This fact is evident from the Bankruptcy Court's lift-stay order, which permitted Bank of America to exercise its state law rights, including the right to foreclose, as to the Tulare Property, *see* Order Lifting Automatic Stay.

The Appellant's next foray into bankruptcy came on October 16, 2009, when she filed a voluntary petition under Chapter 13 of the Bankruptcy Code.[4] The Appellant's Chapter 13 petition resulted in a second stay of any foreclosure proceedings. On November 3 and 10, 2009, the Appellant filed her summary of schedules, noting in Schedules A and D that Bank of America was a secured creditor regarding the Tulare Property and that she did not dispute the debt. *See* Schedules A-J & Amended Summary of Schedules, Bankruptcy No. 09-29846, ECF Nos. 19, 30. On January 22, 2010, the Bankruptcy Court dismissed the Chapter 13 petition because the Appellant had failed to make payments to the Chapter 13 Trustee, in violation of section 1326 of the Bankruptcy Code. *See* Order Granting Motion to Dismiss Case, Bankruptcy No. 09-29846, ECF No. 55. It is worth noting here, too, that the Appellant was granted no discharge relating to Bank of America's secured interest in the Tulare Property. Rather, the Chapter 13 case was dismissed.

---

[4] Under Chapter 13, 11 U.S.C. §§ 1301 *et seq.*, a debtor with regular income may develop a plan to repay all or part of his debts to creditors over a period from three to five years.

The Appellant filed her third bankruptcy petition on March 1, 2010, under Chapter 13 of the Bankruptcy Code. This petition resulted in a third stay of foreclosure proceedings pursuant to 11 U.S.C. § 362(a). In the Appellant's schedules, she identified the Tulare Property, acknowledged that Bank of America had a secured claim relating to that property, and for the first time designated that claim as disputed, despite having listed it as undisputed in her previous two filings. *See* Summary of Schedules, Bankruptcy No. 10-14152, ECF No. 1-1. On September 15, 2010, BAC filed a proof of claim in the Chapter 13 proceeding. The Appellant objected to that proof of claim on September 20, 2010. Objection to Claim Number 5, Bankruptcy No. 10-14152, ECF No. 99.

On August 12, 2010, the Appellant's Chapter 13 Plan was confirmed. *See* Order Confirming Chapter 13 Plan, Bankruptcy No. 10-14152, ECF No. 81. Over one year later, on December 20, 2011, the Chapter 13 Trustee submitted a Final Report and Account, certifying that the estate had been fully administered. *See* Chapter 13 Trustee Final Report and Account, Bankruptcy No. 10-14152, ECF No. 120. The report identified BAC Home Loans Servicing LP ("BAC") as a secured creditor with regard to the Tulare Property and listed its claim of $242,370.23 as "allowed." *See id.*

## II.     The Appellant's Adversary Proceeding Against the Appellees

On April 2, 2010, before the Appellant's Chapter 13 plan was confirmed, the Appellant filed a complaint with ten causes of action against Bank of America, BAC, CIG HIF 1st Lien Mortgage ("CIG"), and Northwest (collectively, "Appellees"). Adversary Case 10-216, Bankruptcy No. 10-14152, ECF No. 42. The Appellant's complaint was docketed as "Adversary Proceeding 10-216" in the Bankruptcy Court, thereby initiating the adversary

proceeding (the "Adversary Proceeding") at issue in this appeal.[5]  On May 14, 2010, the

Appellant filed an Amended Complaint with eight causes of action: (1) fraudulent

misrepresentation; (2) fraud; (3) wrongful foreclosure; (4) bad faith and tortious breach of

contract; (5) unlawful entry; (6) intentional infliction of emotional distress; (7) violation of

Real Estate Settlement and Procedures Act ("RESPA"); and (8) violation of the Truth in

Lending Act ("TILA").  Amended Complaint, Adversary Case 10-216, ECF No. 16.  In both

the original Complaint and the Amended Complaint, the Appellant included, as required

under Bankruptcy Rule 7008, the following statement: "This proceeding is a core proceeding

as it affects the administration of the estate of the bankruptcy case that is before this court

pursuant to 28 USC 157(b)(2)(f)."[6]

On June 10 and 11, 2010, the Appellees filed Motions to Dismiss the Adversary

Proceeding for, among other arguments, failure to set forth viable claims for relief.[7]

Thereafter, the Appellant filed a Second Amended Complaint.  The Appellant's Second

Amended Complaint set forth the same eight causes of action: fraudulent misrepresentation;

(2) fraud; (3) wrongful foreclosure; (4) bad faith and tortious breach of contract; (5) unlawful

entry; (6) intentional infliction of emotional distress; (7) violation of RESPA; and

---

[5] At the same time that the Appellant initiated this Adversary Proceeding, she initiated another,
nearly identical adversary case against Quicken Loans, One West Bank, Deutsche Bank National
Trust Company, Howard N. Bierman, Jacob Geesing, Carrie M. Ward, and Bierman, Geesing &
Ward, LLC.  *See* Adversary Case 10-215, Bankruptcy No. 10-14152, ECF No. 41.  That adversary
case relates to the Appellant's primary residence in Baltimore, Maryland, discussed in note 1 *supra.*
[6] Rule 7008(a) requires the pleader to include a "statement that the proceeding is core or non-core
and, if non-core, that the pleader does or does not consent to entry of final orders or judgment by
the bankruptcy judge." Fed. R. Bankr. P. 7008(a).
[7] Pursuant to Bankruptcy Rules 7008 and 7009, assertions set forth in an adversary complaint must
contain a "short and plain statement of the claim showing that the pleader is entitled to relief," and
"[i]n all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with
particularity."

(8) violation of TILA.  Second Am. Compl., Adversary Case 10-216, ECF No. 37.  For these causes of action, the Appellant sought various forms of relief, including an order enjoining the Appellees' foreclosure sale and deeming Bank of America's deed of trust void; compensatory and punitive damages; and statutory sanctions.  *Id.*  Paragraph 3 of the Second Amended Complaint, like the two previous iterations of the complaint, contained the following assertion: "This proceeding is a core proceeding as it affects the administration of the estate of the bankruptcy case that is before this court pursuant to 28 USC 157(b)(2)(f)." *Id.* ¶ 3.

The Bankruptcy Court held a hearing on the pending motions to dismiss the Appellant's Adversary Proceeding on August 25, 2010.  During that hearing, the Appellant did not challenge the Bankruptcy Court's jurisdiction over the Adversary Proceeding or authority to decide the case.  The Bankruptcy Court ultimately withheld judgment on the motions to dismiss and ordered the Appellees to respond to the Appellant's Second Amended Complaint.  *See* Order Striking, Adversary Case 10-216, ECF No. 86.  Then the Appellees, in two separate motions, moved to dismiss the Second Amended Complaint.  *See* Northwest's Mot. to Dismiss, Adversary Case 10-216, ECF No. 91; BAC, Bank of America, and CIG's Mot. to Dismiss, Adversary Case 10-216, ECF No. 94.  The Bankruptcy Court addressed the pending motions to dismiss at another hearing on October 27, 2010, during which time the Appellant did not challenge the jurisdiction or authority of the Bankruptcy Court.  *See* ECF No. 95.

Finally, on September 30, 2011, the Bankruptcy Court entered a Memorandum Order granting the Appellees' motions to dismiss.  *See* Mem. Order Granting Mots. to Dismiss,

Adversary Case 10-216, ECF No. 129.  Specifically, the Bankruptcy Court held that the Appellant failed to state claims upon which relief could be granted; that several of the Appellant's claims were barred by applicable statutes of limitation; and that all of her claims were barred by judicial estoppel, because the Appellant had not listed the causes of action as assets in her previous bankruptcy cases.[8]

On October 11, 2011, the Appellant filed a motion to vacate the Bankruptcy Court's dismissal order.  *See* Mot. for Vacating Order, Adversary Case 10-216, ECF No. 131.  For the first time, the Appellant challenged the Bankruptcy Court's jurisdiction and authority to decide the Adversary Proceeding.  The Appellant also argued that the Bankruptcy Court could not issue a judgment concerning CIG HFI 1st Lien Mortgage, because it was not a true party but rather a division within Bank of America.

On September 28, 2012, the Bankruptcy Court denied the Appellant's motion to vacate its previous order dismissing the Second Amended Complaint.  *See* Mem. Order Denying Mot. to Am. or Vacate, Adversary Case 10-216, ECF No. 135.  The Bankruptcy Court found that it had jurisdiction over the Adversary Proceeding, as well as statutory and constitutional authority to issue a final order in the case.  In case the district court on appeal found that the Bankruptcy Court did not have authority to issue a final order, the Bankruptcy Court attached its previous dismissal order as proposed findings of fact and conclusions of law for the district court to review under 28 U.S.C. § 157(c)(1).[9]  *See* Mem. Order Denying Motion to Am. or Vacate, Adversary Case 10-216.

---

[8] *See* note 15 *infra.*
[9] *See* note 10 *infra.*

Following the Bankruptcy Court's denial of the Appellant's motion to vacate, the Appellant filed a notice of appeal.  *See* Notice of Appeal, Adversary Case 10-216, ECF No. 137.  In her Statement of Appeal, she raised three issues, claiming that "[t]he [Bankruptcy] Court lacks Article 3 powers to rule on the matters at hand, and the Plaintiff did not waive jurisdiction.  The [Bankruptcy] Court also erred in granting relief to the CIG HFI First [sic] Lien Mortgage whereas they are not a legal entity and cannot be under Court jurisdiction." Statement of Appeal and Decl. of Record, ECF No. 1-1.  Reviewing the Bankruptcy Court's dismissal of the Adversary Proceeding as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1),[10] this Court adopts the Bankruptcy Court's decision to grant the Appellees' motions to dismiss.

## STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001(a) of the Federal Rules of Bankruptcy Procedure, which permits an appeal as of right from a judgment, order, or decree of a bankruptcy judge to a district court as authorized by 28 U.S.C. § 158(a)(1).  On appeal from the Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*.  *In re Merry-Go-Round Enterprises, Inc.,* 400 F.3d 219, 224 (4th Cir. 2005); *In re Kielisch,* 258 F.3d 315, 319 (4th Cir. 2001).  The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings.  *See* Fed. R. Bankr. P. 8013; *see also In re*

---

[10] Section 157(c)(1) authorizes a bankruptcy court to hear certain proceedings and submit proposed findings of fact and conclusions of law to the district court.  28 U.S.C. § 157(c)(1).  Any final order or judgment "shall be entered by the district court."  *Id.*

*White,* 128 F. App'x 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson,* 2006 U.S. Dist. LEXIS

87622, at *6, 2006 WL 3498411 (D. Md. Dec. 4, 2006).

## ANALYSIS

Though the Appellant's brief is tortuous and unstructured, this Court identifies five

separate arguments on appeal.  First, the Appellant argues that the Bankruptcy Court erred

in assuming jurisdiction over this Adversary Proceeding, because her Chapter 13 plan had

already been confirmed by the time the Adversary Proceeding was dismissed.  Second, she

argues that the Bankruptcy Court lacked authority to rule on her Adversary Proceeding.

Third, the Appellant claims that the Bankruptcy Court erred in granting relief to CIG HFI

1st Lien Mortgage.  Fourth, the Appellant argues that a discharge injunction bars the

Appellees from seeking to foreclose on the Tulare Property.  Finally, she argues that the

Bankruptcy Court overstepped its authority at the motion to dismiss stage by adjudicating

facts.

This Court finds that the Bankruptcy Court's entry of a final order in the Adversary

Proceeding ran afoul of Article III.  Because section 157(c)(1) permits the Bankruptcy Court

to submit proposed findings of fact and conclusions of law with regard to the Adversary

Proceeding, however, this Court will construe the Bankruptcy Court's Memorandum Order

granting the Appellees' motions to dismiss as a report and recommendation under 28 U.S.C.

§ 157(c)(1).  Upon review, this Court agrees with the Bankruptcy Court's recommendation

to dismiss the Adversary Proceeding.  Accordingly, this Court ADOPTS the Bankruptcy

Court's findings and conclusions and GRANTS the Appellees' motions to dismiss the

Adversary Proceeding.

## I.      The Appellant's Argument Based on Alleged Discharge Injunction

At the outset, the Appellant's argument based on an alleged discharge injunction is easily dispatched.[11]  The Appellant claims that the debt associated with the Tulare Property was discharged, thus a permanent injunction bars the Appellees from attempting to collect that debt.  *See* Appellant's Br. 7-9, ECF No. 4.  As set forth in the background section of this Memorandum Opinion, the Appellant received a discharge at the close of her first bankruptcy case under Chapter 7.  Contrary to the Appellant's assertion, however, that discharge did not affect the Appellees' lien on the Tulare Property.  Instead, the Bankruptcy Court issued an order to lift the automatic stay imposed by 11 U.S.C. § 362(a), so as to enable Bank of America "to exercise its rights under state law as to" the Tulare Property.  *See* Order Lifting Automatic Stay, Bankruptcy No. 09-18291, ECF No. 53.  The Appellant's claim that she received a discharge of the debt owed the Appellees is belied by her own actions—after her 2009 discharge, the Appellant filed for bankruptcy twice more and initiated an Adversary Proceeding, all in an effort to protect the Tulare Property from foreclosure.

In short, the Appellant's argument that the Appellees' deed of trust has somehow been wiped away gains no traction with this Court.  There is simply no basis in fact for the claim.  This Court now turns to the Appellant's challenges to the jurisdiction and authority of the Bankruptcy Court, which are at the heart of her appeal.

---

[11] The Appellant did not raise this issue in her Statement of Appeal, though she was required to file "a statement of the issues to be presented" under Bankruptcy Rule 8006.  *See* Fed. R. Bankr. P. 8006. Nevertheless, this Court addresses the Appellant's argument in the hope that this decision provides answers to all remaining concerns about the underlying dismissal of her Adversary Proceeding.

## II.    The Bankruptcy Court's Jurisdiction Over This Adversary Proceeding

The Appellant argues on appeal, as she did in her motion to vacate, that the Bankruptcy Court lost subject matter jurisdiction over the Adversary Proceeding when the Appellant's Chapter 13 plan was confirmed.  *See* Appellant's Br. 15-16.  The Appellant also appears to contest whether the Bankruptcy Court had jurisdiction in the first place, stating that the Adversary Proceeding would have "no possibility of impact" on her bankruptcy case.  *Id.* at 16.  This Court finds neither argument availing.

District courts have "original but not exclusive jurisdiction of all civil proceedings arising under Title 11, arising in or related to cases under Title 11."  28 U.S.C. § 1334(b).  By standing order, the United States District Court for the District of Maryland refers to the district's Bankruptcy Court "all cases under Title 11 of the United States Code and proceedings arising under Title 11 or arising in or related to cases under Title 11."  Local Rule 402 (D. Md. 2011).  The Bankruptcy Court was referred the Appellant's case pursuant to Local Rule 402.  So long as the Adversary Proceeding fits into one of the three jurisdictional categories under section 1334(b)—a case arising under Title 11, arising in a case under Title 11, or related to a case under Title 11—then the Bankruptcy Court's exercise of jurisdiction was proper.

This Court finds that, at a minimum, the Appellant's Adversary Proceeding related to her case under Title 11.  A case meets the "related to" prong of section 1334(b) if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  *Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 625 (4th Cir. 1997) (citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir.

1986), and *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). The "related to" prong is the broadest of the three jurisdictional categories of section 1334. To fit within it, "the proceeding need not necessarily be against the debtor or against the debtor's property." *Id.* Rather, "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate." *Id.* The Fourth Circuit has held that "'related to' jurisdiction is to be broadly interpreted." *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 403 (4th Cir. 1992); *see also Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 372 (4th Cir. 1996) ("The 'related to' category of cases is quite broad and includes proceedings in which the outcome could have an effect upon the estate being administered under Title 11.").

In this case, the Bankruptcy Court correctly concluded that it had jurisdiction over the Adversary Proceeding, because its outcome could conceivably have had an effect on the Appellant's estate. The Appellant's requests for relief included compensatory and punitive damages, statutory sanctions, and the avoidance of the Appellees' deed of trust, which operated as a lien on the Tulare Property. *See* Second Am. Compl., Adversary Case 10-216, ECF No. 37. All of these forms of relief, if granted, would have increased the size of the Appellant's estate. *See, e.g., Titus v. Smith*, Civil Action No. 3:12-CV-21, 2012 WL 2255498, at *4 (N.D. W. Va. June 15, 2012) (finding that an adversary proceeding was "related to" the debtor's bankruptcy case because "any recovery in [the adversary] action will increase the size of the [debtor's] bankruptcy estate for the benefit of his creditors"). For these reasons,

the Adversary Proceeding related to the Appellant's Chapter 13 case, and the Bankruptcy Court properly exercised jurisdiction over the proceeding.[12]

The Appellant also argues that even if jurisdiction were proper at the initiation of the Adversary Proceeding, the Bankruptcy Court lost jurisdiction when the Appellant's Chapter 13 plan was confirmed.  Appellant's Br. 15-16.  The Bankruptcy Court addressed this argument in deciding the Appellant's motion to vacate.  Because it had jurisdiction when the Adversary Proceeding was filed, the Bankruptcy Court correctly reasoned that "a subsequent event, such as the confirmation of [the Appellant's] chapter 13 plan, could not divest the [Bankruptcy Court] of jurisdiction.  Mem. Order Denying Mot. to Vacate 8, Adversary No. 10-216.

It is well settled that when a court possesses subject matter jurisdiction at the time an action is commenced, "such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).  This principle holds true in the bankruptcy context.  *See, e.g.*, *In re Celotex Corp.*, 124 F.3d at 626 (noting that the confirmation of a debtor's plan for reorganization could not divest that court of its "related to" jurisdiction); *Cooper v. BB Syndication Servs. (In re 222 South Caldwell Street, Ltd. P'ship)*, 409

---

[12] Finding that there is "related to jurisdiction," this Court need not consider the Bankruptcy Court's additional justification for concluding it had jurisdiction—namely, that the Appellant's causes of action were property of the estate.  It bears noting, though, that the Appellant's claim that the Adversary Proceeding was not property of the estate is unavailing.  A bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  Prepetition causes of action are generally included in a bankruptcy estate.  *See, e.g.*, *Wieburg v. GTE Southwest, Inc.*, 272 F.3d 302, 304 (5th Cir. 2001) (finding that a debtor's claims arising out of prepetition conduct were property of the estate); *McConnell v. K-2 Mortg.*, 390 B.R. 170, 176 (Bankr. W.D. Pa. 2008) ("There is no question that a debtor's pre-petition cause of action is property of the bankruptcy estate."); *see also Browning Mfg. v. Mims (In re Coastal Plains)*, 179 F.3d 197, 207-08 (5th Cir. 1999), *cert. denied*, 528 U.S. 1117 (2000) (holding that a debtor has a duty to disclose all potential causes of action).

B.R. 770, 784 (Bankr. W.D.N.C. 2009) (holding that when an adversary proceeding is pending at the time of plan confirmation and settlement, jurisdiction is retained over the proceeding under section 1334). Applying Fourth Circuit law, the Bankruptcy Court correctly held that it was not deprived of jurisdiction when the Appellant's Chapter 13 plan was confirmed.

In summary, the Bankruptcy Court had at least "related to" jurisdiction over the Appellant's adversary proceeding and thereby met the jurisdictional requirement under 28 U.S.C. § 1334(b). The confirmation of the Appellant's Chapter 13 plan did not divest the court of its jurisdiction. While this holding puts to rest some of the Appellant's claims, this Court now turns to the Appellant's argument that the Bankruptcy Court lacked authority to dismiss the Adversary Proceeding.

### III.   The Bankruptcy Court's Authority To Dismiss the Adversary Proceeding

The Appellant maintains that the Bankruptcy Court was without authority to order the dismissal of the Appellant's adversary proceeding. She primarily relies on *Stern v. Marshall*, 131 S. Ct. 2594 (2011), in which the Supreme Court recently held that Article III of the United States Constitution limits the scope of claims that a bankruptcy court may hear and decide. Before reaching the constitutional issue presented in *Stern*, though, it is important to establish the Bankruptcy Court's statutory authority for dismissing the Adversary Proceeding.

A. Statutory Authority for the Bankruptcy Court's Entry of Final Judgment

As the Supreme Court explained in *Stern*, "[t]he manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved." *Id.* at 2603. In

28 U.S.C. § 157, Congress delineated a bankruptcy court's authority to resolve matters over which it possesses jurisdiction.  Section 157 provides that a bankruptcy court can hear and enter final judgment in "all cases under title 11" as well as in "core proceedings."  28 U.S.C. § 157(b)(1).  Core proceedings "include, but are not limited to" sixteen matters, such as "determinations of the validity, extent, or priority of liens."[13]  "Parties may appeal final judgments of a bankruptcy court in core proceedings to the district court, which reviews them under traditional appellate standards."  *Stern*, 131 S. Ct. at 2604 (citing 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8013).

---

[13] The following matters are core proceedings under 28 U.S.C. § 157(b)(2):

    (A) matters concerning the administration of the estate;

    (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 . . . ;

    (C) counterclaims by the estate against persons filing claims against the estate;

    (D) orders in respect to obtaining credit;

    (E) orders to turn over property of the estate;

    (F) proceedings to determine, avoid, or recover preferences;

    (G) motions to terminate, annul, or modify the automatic stay;

    (H) proceedings to determine, avoid, or recover fraudulent conveyances;

    (I) determinations as to the dischargeability of particular debts;

    (J) objections to discharges;

    (K) determinations of the validity, extent, or priority of liens;

    (L) confirmations of plans;

    (M) orders approving the use or lease of property, including the use of cash collateral;

    (N) orders approving the sale of property . . . ;

    (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . ; and

    (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

On the other hand, section 157 provides that where a proceeding is not core but "is otherwise related to a case under title 11," a bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court." 28 U.S.C. § 157(c)(1). The district court then enters any final order or judgment in the case, "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* any matter to which" a party objects. *Id.*

In reviewing its authority under section 157, the Bankruptcy Court noted the many times that the Appellant denominated her Adversary Proceeding as a "core proceeding." *See* Mem. Order Denying Mot. to Vacate 10 (referring to the Appellant's assertions in her original complaint and first and second amended complaints that the Adversary Proceeding "is a core proceeding as it effects the administration of the estate of the bankruptcy case"). Alluding to the core proceeding in subsection 157(b)(2)(K)—"determinations of the validity, extent, or priority of liens"—the Bankruptcy Court described the Adversary Proceeding as "a series of issues that ultimately determined the validity of the lien against [the Appellant's] property." *Id.* at 11. The court went on to find that regardless of whether the Adversary Proceeding was core, the Appellant had consented to the issuance of final orders by the Bankruptcy Court. *Id.* Though the Appellant never explicitly consented to the Bankruptcy Court's final adjudication of her Adversary Proceeding, the court found that the Appellant had impliedly consented by filing two adversary cases in the court, labeling them core, and litigating them "prolifically . . . for the better part of eighteen months" without ever raising a concern that the court might not have authority to enter final judgment. *Id.*

For purposes of determining whether the Bankruptcy Court had statutory authority to enter final judgment in this Adversary Proceeding, this Court concurs with the Bankruptcy Court's conclusions.[14]  Even if the Adversary Proceeding were not core under section 157, the Bankruptcy Court correctly found that the Appellant had consented to the Bankruptcy Court's adjudication of her case.  Pursuant to section 157(c)(2), a bankruptcy court may hear and enter final orders in a noncore proceeding "related to a case under title 11," so long as the parties consent.  28 U.S.C. § 157(c)(2).  Section 157(c)(2) does not require that consent be express, and under Fourth Circuit precedent, a bankruptcy court may infer consent to enter final judgment in a noncore proceeding.  *See In re Johnson*, 960 F.2d at 402; *see also* COLLIER ON BANKRUPTCY, P.3.03[4] (16th ed. 2010) (noting a split of authority on the issue of implied consent and finding that the "better result would be to permit consent to be implied").

In *In re Johnson*, the Fourth Circuit determined that a bankruptcy court's entry of a dispositive order in a proceeding assumed to be a "noncore related matter" was proper because the parties had impliedly consented to the bankruptcy court's final adjudication.  960 F.2d at 402.  The appellate court noted that while some courts require express consent under section 157, the "substantial weight of authority" holds that "a party's right to challenge entry of judgment by the bankruptcy court in a non-core related matter can be waived by failure to make a timely objection."  *Id.* at 403.  The parties in *In re Johnson* consented, the

---

[14] As discussed in greater detail in Section III.B *infra*, this Court finds that the statutory grant of authority in this case ran afoul of Article III of the United States Constitution, which prohibits the withdrawal "from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law."  *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1856).

Fourth Circuit found, by failing to object to the bankruptcy court's authority to issue a final order. *Id.* at 403-04.

Likewise, the Appellant impliedly consented to the Bankruptcy Court's adjudication of her Adversary Proceeding. The Appellant chose to file not one but two adversary cases in the Bankruptcy Court. Throughout each of those cases, she maintained that they were core proceedings. *See, e.g.*, Adversary Case 10-216, ECF Nos. 1 (Complaint), 16 (Amended Complaint), 27 (Second Amended Complaint), & 75-1 (Third Amended Complaint). Moreover, the Appellant aggressively litigated each adversary case, filing several amendments to her complaint, motions to appeal, emergency motions, and motions to strike. *See* Adversary Case 10-216. Only after the Bankruptcy Court granted the Appellees' motion to dismiss the Adversary Case did the Appellant raise the argument that the Bankruptcy Court lacked authority to enter a final ruling. Similar to the consenting parties *In re Johnson*, the Appellant failed to object to the court's authority to hear the Adversary Proceeding for over a year, an omission from which the Bankruptcy Court was permitted to infer consent. 960 F.2d at 402-03 (inferring consent where parties failed to object to the bankruptcy court's adjudication of their case and noting that "[i]t was only after the bankruptcy court [rendered an adverse decision] that objections . . . arose").

As the Bankruptcy Court reasoned, "[i]t is precisely in circumstances like these—in which a party has participated in the case after which an adverse judgment has been made against them—that courts are loathe to find a lack of consent." Mem. Order Denying Mot. to Vacate 12; *see also Roell v. Withrow*, 538 U.S. 580, 590 (2003) ("[I]nferring consent in these circumstances thus checks the risk of gamesmanship by depriving parties of the luxury of

waiting for the outcome before denying the [Article I] judge's authority."). In its recent opinion, the Supreme Court in *Stern* employed similar reasoning where an objecting party had previously stated "that he was happy to litigate [in the bankruptcy court]." 131 S. Ct. at 2608. The Court reasoned that waiver in such circumstances is valuable because it avoids "the consequences of a litigant . . . sandbagging the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor." *Id.* (citations omitted). A finding that the Appellant consented is appropriate in this case as well, to prevent the Appellant from objecting only after the Bankruptcy Court's adverse decision. If the Appellant disagreed with the Bankruptcy Court's authority over the case, she "should have said so—and said so promptly." *Id.*

In sum, this Court finds that the Bankruptcy Court correctly held that it had statutory authority to enter final judgment in the Adversary Proceeding, based on the Appellant's implied consent. Establishing the Bankruptcy Court's statutory grant of power, however, is only the first step. Congress's grant of power can survive only if it does not overstep the bounds of Article III, which prohibits Congress from withdrawing "from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty." *See Murray's Lessee*, 59 U.S. at 284.

B. Constitutional Limitations on the Bankruptcy Court's Power to Adjudicate

The Appellant challenges the Bankruptcy Court's final orders in the Adversary Proceeding as an unconstitutional exercise of the judicial power designated to Article III courts. She relies on *Stern v. Marshall*, 131 S. Ct. 2594 (2011), in which the Supreme Court held that in some cases involving core proceedings, only an Article III judge may enter a

final order or judgment. The Appellees, on the other hand, argue that *Stern*'s limited holding does not apply to this case and, even if it did, that the Appellant consented to the Bankruptcy Court's entry of final judgment.

Even where a Bankruptcy Court possesses jurisdiction and the statutorily granted power to hear and determine a proceeding, Article III presents an independent bar to the court's adjudication of at least some cases. *See Stern*, 131 S. Ct. at 2601 (concluding that "although the Bankruptcy Court had the statutory authority to enter judgment on [the debtor's civil counterclaim], it lacked the constitutional authority to do so"); COLLIER ON BANKRUPTCY P. 3.02[2] (16th ed. 2010) ("[The] grant of power [to hear and determine cases under section 157(b)(1)] in certain proceedings is unconstitutional, at least in part, pursuant to the holding in *Stern v. Marshall*."). In particular, the Supreme Court in *Stern* addressed a bankruptcy court's final judgment on a common law counterclaim, which the debtor asserted against a creditor who had filed a proof of claim in her bankruptcy case. 131 S. Ct. 2594. Though the counterclaim qualified as a core proceeding and the Bankruptcy Court otherwise possessed jurisdiction, the Supreme Court found that the Bankruptcy Court's decision constituted an unconstitutional exercise of the judicial power of the United States. *Id.* Unless an action "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process," the Supreme Court asserted, then a bankruptcy court may not decide the matter. *Id.* at 2618. The Court also acknowledged that "[w]hen a suit is made of 'the stuff of the traditional actions at common law tried by the courts at Westminster in 1789,' . . . the responsibility for decided that suit rests with Article III judges in Article III

courts." *Id.* at 2609 (citing *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 90 (1982)).

The Appellees argue that *Stern*'s holding applies to just one specific type of core proceeding—determinations of state law counterclaims under 28 U.S.C. § 157(b)(2)(C). Because this Adversary Proceeding does not fall under section 157(b)(2)(C), the argument follows, Article III presents no constitutional barrier to the Bankruptcy Court's order of dismissal.  There is a split of authority on this issue.  Courts that have reached the conclusion that *Stern* applies only to section 157(b)(2)(C) tend to point to the Supreme Court's language in *Stern* suggesting that its holding "does not change all that much."  *Stern*, 131 S. Ct. at 2620; *id.* ("We do not think the removal of counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute."); *see also Badami v. Sears (In re AFY, Inc.)*, 461 B.R. 541, 547-48 (B.A.P. 8th Cir. 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional.").

Many courts post-*Stern*, including this Court, have decided differently—holding that *Stern* applies to all of section 157(b)(2).  *See, e.g.*, *In re Erickson Retirement Cmties., LLC*, Civil No. WDQ-11-3736, 2012 WL 1999493 (D. Md. June 1, 2012) (applying *Stern* to withdraw the reference to a bankruptcy court of claims falling under multiple subsections of section 157(b)(2)); *see also Exec. Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)*, 702 F.3d 553 (9th Cir. 2012) (holding that *Stern* bars a bankruptcy court's decision of fraudulent conveyance claims asserted against noncreditors); *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*,

665 F.3d 906 (7th Cir. 2011) (applying *Stern* to claims fitting under subsections of section 157(b)(2) other than section 157(b)(2)(C)).  Buttressing the conclusion that *Stern* applies broadly is the logic of *Stern* itself, which rests on separation of powers concerns.  As the Supreme Court in *Stern* reasoned, the Constitution assigns the job of addressing "the resolution of 'the mundane as well as the glamorous, matters of common law and statute as well as constitutional law, issues of fact as well as issues of law'—to the Judiciary."  131 S. Ct. at 2594.  Accordingly, when a bankruptcy court hears a case under section 157's statutory grant of final adjudicative authority, the court must meet *Stern*'s test or else its final decision will violate Article III.

This Court agrees with those courts that apply *Stern* broadly, because the separation of powers concerns in *Stern* implicate all of Congress's grant of authority under section 157(b)(2).  Moreover, because the Bankruptcy Court ordered the dismissal of a case that fails *Stern*'s test, those Article III concerns are triggered in this case.  Applying the test developed in *Stern*, at least some of the Appellant's eight causes of action—including the Appellant's unlawful entry, wrongful foreclosure, Real Estate Settlement and Procedures Act ("RESPA"), and Truth in Lending Act ("TILA") claims—are not the kind of claims that stem "from the bankruptcy itself or would necessarily be resolved in the claims allowance process."  131 S. Ct. at 2618.  Rather, those claims are "the stuff of the traditional actions at common law," which is constitutionally delegated to Article III courts.  *Id.*  Because the Bankruptcy Court's purported authority in this case represents the sort of congressional "chip[ping away at the authority of the Judicial Branch" that *Stern* forbade, *id.* at 2620, the court's decision cannot be considered final.

The Appellees argue, however, that the Appellant's consent to the Bankruptcy Court's adjudication of her case operates to waive her right under Article III.  The issue the Appellees raise—whether a party can waive an Article III violation in this context—is not without debate.  Some courts have found that a party can consent to a bankruptcy court's adjudication and thereby waive the violation under Article III.  *See, e.g.*, *Adams Nat'l Bank v. GB Herndon & Assocs., Inc. (In re GB Herndon & Assocs., Inc.)*, 459 B.R. 148 (Bankr. D.D.C. 2011) ("[E]ven after *Stern v. Marshall,* the bankruptcy court may adjudicate a proceeding, without running afoul of Article III, when there has been consent by the parties."); *In re Bellingham Ins. Agency*, 502 F.3d at 567 ("[A]s a personal right, Article III's guarantee of an impartial and independent federal adjudication is subject to waiver." (citation omitted)).

Other courts have found that the Article III problem inherent in a bankruptcy court's resolution of certain core proceedings cannot be waived.  These courts reason that a bankruptcy court's exercise of judicial power implicates a structural principle—namely, the safeguarding of the role of the judiciary in the tripartite system of government—which is not the parties' to waive.  *See Waldman v. Stone*, 698 F.3d 910, 918 (6th Cir. 2012) (finding that the separation of powers principle cannot be waived when a bankruptcy court exercises Article III powers); *Samson v. Blixseth (In re Bixseth)*, Adversary No. 10-00088, 2011 WL 3274042, at *12 (Bankr. D. Mont. 2011) (same).

Because the Court of Appeals for the Fourth Circuit has not ruled on this issue, this Court will assume, without deciding, that the Appellant could not waive the separation of powers principle inherent in Article III.  Accordingly, this Court finds that the Bankruptcy Court's entry of final judgment in the Adversary Proceeding ran afoul of Article III, because

24

the court resolved claims that did not stem "from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618.

The question that remains is what authority, if any, did the Bankruptcy Court have with regard to the Adversary Proceeding. Section 157 sets out the manner in which a bankruptcy court may address core and noncore proceedings, but it was enacted before *Stern*, when Congress assumed that a bankruptcy court had constitutional authority to issue final judgments in all core proceedings. For that reason, section 157 does not contemplate a set of proceedings that, despite being core, a bankruptcy court may not hear and decide. *In re Bellingham Ins. Agency*, 702 F.3d at 565 (acknowledging a "gap in [the statutory] framework" where a proceeding is core yet may not be decided finally by a bankruptcy court).

A majority of courts considering this issue in *Stern*'s wake have concluded that a bankruptcy court has the power to submit proposed findings of fact and conclusions of law on claims for which they cannot issue final judgments. *See, e.g., id.* at 565-66 (finding that the statutorily granted power to "hear and determine" a proceeding necessarily includes the lesser power to submit findings of fact and conclusions of law, and that only the former power was abrogated by *Stern*); *Kirschner v. Agoglia*, 476 B.R. 75, 81-82 (S.D.N.Y. 2012) (following a majority of district and bankruptcy courts that have found that "a bankruptcy court does have the power (statutory and otherwise) to issue a report and recommendation on" core proceedings that fail *Stern*'s test); *Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman)*, 464 B.R. 348, 355-56 (N.D. Cal. 2011) (same). *But see In re Ortiz*, 665 F.3d at 915 (7th Cir. 2011) (rejecting the application of section 157(c)(1) to "related to" proceedings before a bankruptcy court); *In re Blixseth*, 2011 WL 3274042, at *12 (finding no authority to

enter a report and recommendation on a core fraudulent conveyance claim).  This Court agrees with the majority of courts finding that a bankruptcy court can submit findings and conclusions where it otherwise cannot hear and decide a case.  The reasoning of the United States District Court for the District of California is apt:

> Since Congress delegated broader authority to bankruptcy courts in core matters than non-core matters, 28 U.S.C. § 157(b)(1), (c)(1), and the delegation included the authority to hear and determine all cases and enter appropriate orders, 28 U.S.C. § 157(b)(1), there appears to be no reason why bankruptcy courts cannot continue to hear all pre-trial proceedings and enter as an appropriate order proposed findings of fact and conclusions of law in the manner authorized by Section 157(c)(1).

*In re Heller Ehrman*, 464 B.R. at 355; *see also In re Bellingham Ins. Agency*, 702 F.3d at 565 ("Congress enumerated the examples of core proceedings in § 157(b)(2) with a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit." (citation and quotation marks omitted)).  Moreover, this majority practice coheres with the Supreme Court's assertion that its holding in *Stern* would not "meaningfully change[] the division of labor in the current statute."  131 S. Ct. at 2620.  For these reasons, this Court finds that while Article III prohibited the Bankruptcy Court's order of dismissal of the Adversary Proceeding, that order may still be treated as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).

## IV.    Adoption of the Bankruptcy Court's Order of Dismissal

The proper remedy for the Bankruptcy Court's error is to treat its order of dismissal as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1).  Other courts have agreed with this remedy and found that treating a bankruptcy court's order, which is found to be inconsistent with Article III, as findings of fact and conclusions of law

is "within the inherent powers of the federal district court."  *Kirschner*, 476 B.R. at 82-83 (concluding that a district court's standing order to treat an "order of the bankruptcy court as proposed [findings and conclusions] in the event the district court concludes that the bankruptcy judge could not have entered a final order" was proper); *see also In re Refco Inc.*, 461 B.R. 181, 193-93 (S.D.N.Y. 2011) (finding jurisdiction to deem the bankruptcy court's decision and order to be proposed findings of fact and conclusions of law); *Retired Partners of Coudert Bros. Trust v. Baker & McKenzie LLP (In re Coudert Bros. LLP)*, 2011 WL 5593147, *13- 14 (S.D.N.Y. Sept. 23, 2011) (converting bankruptcy court's final order to a report and recommendation, which the district court then reviewed *de novo*); *cf. Paloian v. Am. Express Co. (In re Canopy Fin., Inc.)*, 464 B.R. 770, 775 (N.D. Ill. 2011) (finding no good cause for withdrawing reference to bankruptcy court of claims outside of bankruptcy court's authority to adjudicate, because court could still propose findings of fact and conclusions of law); *Field v. Lindell (In re The Mortg. Store, Inc.)*, 464 B.R. 421 (D. Haw.) (same).  The Appellant herself now agrees with that remedy.  *See* Appellant's Reply Br. 8, ECF No. 12.  Accordingly, this Court will treat the order as proposed findings and conclusions under 28 U.S.C. § 157(c)(1). Pursuant to section 157(c)(1), then, this Court must enter a final order or judgment "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

        In this case, the Appellant raises two specific objections to the Bankruptcy Court's order of dismissal.  First, she objects to the dismissal of CIG HFI 1st Lien Mortgage ("CIG"), which is a division of Bank of America.  *See* Appellant's Br. 5-7.  Second, the

Appellant contends that the Bankruptcy Court erred "in adjudicating facts in its ruling." *See*
*id*. at 19-21.  Applying section 157(c)(1), this Court reviews these matters *de novo*, before
considering the remainder of the Bankruptcy Court's findings and conclusions.

In particular, the Appellant argues that Bank of America has admitted that CIG is not
an independent legal entity but a part of the bank.  She asserts, therefore, that CIG should
not have been granted relief.  *See* Appellant's Br. 1.  The Appellant concludes that the only
relief that can be granted to CIG is voluntary dismissal, and she asks this Court to dismiss
CIG for these reasons.  *Id*. at 6, 36.

The Appellant's objection is without any legal support and futile.  Taking for granted
that CIG is a part of Bank of America, this Court finds nothing actionable with regard to the
Bankruptcy Court's order of dismissal.  CIG was involved in the Adversary Proceeding by
virtue of the Appellant filing suit against it.  Although CIG is not an independent legal entity,
the Appellant points to no law prohibiting dismissal in such circumstances.  Most
importantly, the Appellant now seeks the result that the Bankruptcy Court already reached—
the dismissal of CIG.  Accordingly, this objection is rejected.  This Court finds no error in
the Bankruptcy Court's treatment of CIG.

The Appellant's second objection involves the standard of review applied by the
Bankruptcy Court.  When the court dismissed the Adversary Proceeding under Rule 12(b)(6)
of the Federal Rules of Civil Procedure, the Appellant maintains that the Bankruptcy Court
failed to accept the complaint's factual allegations as true.  Reviewing the Bankruptcy Court's
opinion *de novo*, this Court finds no support for the Appellant's objection.  The Bankruptcy
Court's decision rested on legal conclusions about the sufficiency of the Appellant's Second

Amended Complaint.  The court explained that while the Appellant's complaint was "unstructured, vague, and lacking in factual detail," it managed to "give shape and definition to the Debtor's allegations" so as to evaluate her pleadings under "motion to dismiss standards." *See* Mem. Order Granting Mots. To Dismiss 4.  In reaching its conclusions, the Bankruptcy Court adhered to those standards.

As to the Appellant's fraud-based claims, the Bankruptcy Court found that the Appellant failed to plead with particularity the circumstances constituting fraud, citing Rule 9(b) of the Federal Rules of Civil Procedure.  *See id.* at 9-10.  The Bankruptcy Court also dismissed the Appellant's wrongful foreclosure attempt claim, because there is no such cause of action under law.  *Id.* at 11-12.  As to the Appellant's "bad faith and tortious breach of contract claim," the Bankruptcy Court could find no contractual violation pled in the complaint.  *Id.* at 12-13.  Similarly, the Appellant's unlawful entry claim was dismissed because she did not plead any facts against the defendant to which that count was directed. *Id.* at 14-15.  Finally, her intentional infliction of emotion distress, RESPA, and TILA claims were dismissed for failure to plead the necessary elements of those causes of action.  *Id.* at 17-18; 19-21; 21-23.

In addition to those legal justifications for dismissal, the Bankruptcy Court dismissed the complaint on grounds of judicial estoppel and the statute of limitations.  The court found that the doctrine of judicial estoppel barred all eight of the Appellant's claims, since the Appellant did not disclose the claims in her Chapter 7 bankruptcy case, as required under

11 U.S.C. § 521.[15]   Moreover, the Bankruptcy Court identified the longest statute of limitations for any of the causes of action pled against Bank of America to be three years, a time period which started running after the closing of the loan in September 2006 and which had passed by the time the Adversary Proceeding was filed on April 2, 2012.   Thus the Bankruptcy Court reasoned that "all allegations that rest on facts arising out [of] actions that Bank of America allegedly took in connection with the closing of the loan are time-barred." Mem. Order Granting Mots. To Dismiss 25-26.

All of these decisions relied on applications of law to the facts as the Appellant had pled them.   The Bankruptcy Court did not engage in any fact finding when it found, accepting the facts of the Appellant's complaint as true, that the Appellant's Second Amended Complaint failed as a matter of law.   Having performed *de novo* review of this issue, this Court rejects the Appellant's objection that the Bankruptcy Court improperly adjudicated facts in its ruling.   This Court, therefore, DENIES both of the Appellant's objections.

Under section 157(c)(1), this Court may enter a final order or judgment only "after considering the bankruptcy judge's proposed findings and conclusions."   28 U.S.C. § 157(c)(1).   This Court has carefully considered the findings and conclusions contained in the Bankruptcy Court's order granting the Appellees' motions to dismiss the Adversary Proceeding.   The Bankruptcy Court granted that motion only after thorough and liberal review of the Appellant's Second Amended Complaint.   The decision to dismiss the

---

[15] Section 521, as the Bankruptcy Court explained, "requires that all debtors file schedules of assets and liabilities, income and expenditures and a statement of financial affairs.  This duty to disclose is continuing, and included within it is the duty to disclose all actual and potential causes of action." Mem. Order Granting Mots. To Dismiss 24 (citing *In re Coastal Plains, Inc.*, 179 F.3d at 208).

Adversary Proceeding rested on sound legal analysis about the sufficiency of the complaint. Upon review, this Court finds no error with the Bankruptcy Court's analysis. Accordingly, this Court ADOPTS the Bankruptcy Court's order of dismissal under 28 U.S.C. § 157(c)(1). Accepting the recommendation of the Bankruptcy Court as the correct resolution of this case, this Court GRANTS the Appellees' Motion to Dismiss the Appellant's Second Amended Complaint. The Adversary Proceeding is therefore DISMISSED.

## CONCLUSION

For the reasons set forth above, this Court finds that the Bankruptcy Court had jurisdiction over the Adversary Proceeding. While Article III prevented the Bankruptcy Court from entering an order of dismissal, the Bankruptcy Court's Order Granting Motions to Dismiss is construed as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1). After reviewing *de novo* the matters to which the Appellant lodged objections, this Court DENIES the objections as meritless. Indeed, this Court finds no error with the Bankruptcy Court's Order Granting Motions to Dismiss and agrees fully with its legal analysis. Accordingly, this Court ADOPTS the findings and conclusions of the Bankruptcy Court and GRANTS the Appellees' Motion to Dismiss the Appellant's Second Amended Complaint for failure to state a claim upon which relief can be granted. Consequently, the Adversary Proceeding filed by the Appellant is DISMISSED.

A separate Order follows.


Dated: April 17, 2013                         _____/s/_____
                                              Richard D. Bennett
                                              United States District Judge